**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-14-0001178**
**25-JAN-2016**
**09:07 AM**

NO. CAAP-14-0001178

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JM, Plaintiff-Appellee,
v.
YM, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 13-1-0236)


MEMORANDUM OPINION
(By:  Nakamura, C.J., Fujise and Ginoza, JJ.)

Defendant-Appellant YM (Mother) appeals from the "Decree Granting Absolute Divorce and Awarding Child Custody," filed September 16, 2014, in the Family Court of the First Circuit (family court).[1]  Related to this appeal, on February 24, 2015, the family court filed a "Supplemental Record on Appeal [Findings of Fact and Conclusions of Law]" (FOFs/COLs).

Mother contends the family court erred when it ordered that the two minor children of Mother and Plaintiff-Appellee JM (Father) shall relocate to Georgia and that Father shall have sole physical custody of children unless Mother also moves to Georgia within ninety days of a Decision and Order filed on August 14, 2014.  Mother argues that the family court erred: (1) in numerous Findings of Fact (FOFs) and Conclusions of Law

---

[1]  The Honorable Kevin A. Souza presided.

(COLs)[2]; and (2) in ultimately determining that relocation was in the best interests of the children.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Mother's point of error as follows and affirm the family court.

## I.   Standard of Review

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation and block format omitted).

> The family court's FOFs are reviewed on appeal under the clearly erroneous standard.  A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. Substantial evidence . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
> On the other hand, the family court's COLs are reviewed on appeal *de novo*, under the right/wrong standard. COLs, consequently, are not binding upon an appellate court and are freely reviewable for their correctness.

In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001) (internal citations, quotation marks and brackets omitted).

## II.   Discussion

Mother contends that the family court erred when it found that it was in the best interests of the children to relocate to Georgia.

Hawaii Revised Statutes (HRS) § 571-46 (Supp. 2012) provides the criteria for awarding child custody.  HRS § 571-46

---

[2] Mother challenges FOFs: 22-48, 56-63, 81-82, 84, 86-88, 93-94, 96-99, and 104.  Mother challenges COLs: 8-9, 12-14, 20-21. Many of the FOFs and COLs address similar matters and thus we address them generally as appropriate groups.

provides in pertinent part:

> § 571-46 Criteria and procedure in awarding custody and visitation; best interest of child.
> (a) In actions for divorce . . . where there is at issue a dispute as to the custody of a minor child . . . . the court shall be guided by the following standards, considerations, and procedures:
> > (1) Custody should be awarded to either parent or to both parents according to the best interests of the child . . . ;
> >
> > . . . .
> >
> > (4) Whenever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties. . . .
> >
> > . . . .
> >
> > (9) In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence.

The "best interests of the child standard [is] paramount when considering the issue of custody" and "the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met." Fisher, 111 Hawaiʻi at 50, 137 P.3d at 364.

### A.   Reliance on the custody evaluator's report.

Mother contends that numerous FOFs were erroneous because the family court relied too heavily on the Custody Evaluator's Report (CE's Report).  Mother cites in particular to FOFs 22-23 and 25-30, which rely on the CE's Report and the CE's testimony.  Mother also challenges FOF 88 asserting that the family court relied too heavily on the CE's Report to make a finding about Father's parenting skills.  Further, Mother challenges FOF 94 asserting that the family court incorrectly relied on the CE's Report in determining Mother would face financial pressure because she would have to work relatively low paying jobs while attending school full time.

"[T]he family court is given much leeway in its

examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." In re Doe, 95 Hawaiʻi at 190, 20 P.3d at 623 (citation, internal quotation marks and brackets omitted).

In this case, there is substantial evidence for the family court to rely on the CE's Report for its FOFs. In preparing her report, the CE interviewed and/or met with Father, Mother, both minor children, paternal grandparents, maternal grandparents, a mentor to Mother, and school officials at the children's schools. The CE also reviewed documents including emails, criminal history records, medical records, and the children's school records. At trial, the family court heard testimony from Mother, Father, the CE, paternal grandparents, maternal grandparents, Dr. Phillip Stahl (Dr. Stahl), and Raylani Lupton (Lupton), a visitation supervisor hired by Father.

Substantial evidence supports the family court's finding that Father is capable of providing competent and effective parenting. The CE testified that Father is "a very engaged father" and that "he has very good parenting skills." The CE also testified that the children "are very engaged with him when they're together" and Father is "very affectionate; he watches out for their safety; he communicates with them." In addition, when Lupton was asked how she would describe Father's sensitivity to the needs of his children, Lupton responded: "I believe he was very sensitive to them. You know, each day was something different for him. And I think he was pretty quick to catch on to how the girls were feeling and -- and what they needed." The children's paternal grandfather testified that Father "was definitely being a good father."

Finally, the family court's finding that Mother would experience financial pressure as a single parent if she remained in Hawaiʻi is supported by substantial evidence. Mother testified that she works part time and makes $464.50 per month. Mother also receives $169.38 in child support and $605 in

4

foodstamps.  She also testified that she planned to go to school full time.  Finally, Mother testified that her rent was $1300 per month.  Although there is some evidence that Mother might receive further financial assistance from maternal grandparents, the extent of such assistance is unclear.  The evidence provides substantial evidence to support the family court's finding that Mother would experience financial pressure if she remained in Hawai'i as a single parent.

### B.  Dr. Stahl's Testimony.

Mother challenges the family court's FOFs regarding Dr. Stahl's testimony.  Mother hired Dr. Stahl to give his opinion of the CE's Report.

"It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact."  Fisher, 111 Hawai'i at 46, 137 P.3d at 360 (citation and quotation marks omitted).

The family court determined that less weight would be afforded to Dr. Stahl's testimony than the CE's testimony because, unlike the CE, Dr. Stahl never interviewed the parties or their children or saw the children's interactions with the parents.  Thus, Dr. Stahl was less familiar with the parties themselves and his scope was "a limited universe of documentation concerning the case."  Therefore, it is not clearly erroneous for the family court to give less weight to Dr. Stahl's testimony.

### C.  The family's connection with Georgia.

Mother challenges the family court's findings regarding the children's connection to Georgia because Mother contends that the evidence shows that the children also have significant ties to Hawai'i.

The family court found that the children have significant ties to Georgia because, *inter alia*, the children were born and resided in Georgia until the family moved to Hawai'i in 2012, they have family in Georgia, one of the children went to school there, the children had a physician and dentist

there, and Father owns a home in Tyrone, Georgia.  Father, paternal grandparents, Mother, and the CE testified to the findings above.  Therefore, there was substantial evidence to support the family court's FOFs 31-48.

### D.  Inherent risks of raising the children in Hawai'i.

In FOF 93, the family court found that "there are inherent risks associated with Mother raising the minor children as a single parent in Hawai'i with relatively few resources at her disposal."  Mother contends that "there is no expert or other testimony or evidence to support a finding of any such 'inherent risks' or what their impact may be."

However, the evidence indicates that Mother's parents, who provide emotional support to Mother, live in Mexico.  In addition, Mother can only work part-time while in school, Mother plans on attending school full time, and Mother partially relies on student loans.  Mother will have to obtain day care for the children while she is in school or working.  Mother's employment history has consisted of minimum wage jobs.  Maternal grandparents have loaned Mother significant amounts of money, approximately $150,000.  Maternal grandmother also testified that at the time maternal grandparents spoke with the CE they stated they could provide $1,000 per month of support for Mother, however, maternal grandparents had not actually provided this support at the time of trial.

Therefore, substantial evidence supports the family court's FOF that there are inherent risks associated with Mother raising the minor children as a single parent in Hawai'i.

### E.  Physical custody.

Mother contends that relocation is not in the best interests of the children because relocation contradicts prior decisions granting physical custody to Mother.  In addition, Mother contends that because she was the primary care giver, she should have physical custody of the children.

On February 22, 2013, the family court awarded temporary sole physical and legal custody of both minor children to Mother "pending a hearing on [Mother's] Motion and Declaration

for Pre-Decree Relief, filed concurrently herewith, and set for March 20, 2013[.]"[3] On May 8, 2013, the family court entered an order that found, *inter alia*: "on March 20, 2013, the parties reached an oral agreement regarding Defendant's Motion and Affidavit for Pre-Decree Relief, filed February 22, 2013. The oral agreement consisted of the following terms: 1) The parties shall share legal and physical of their children . . . ."[4] Thus, prior to the final divorce decree, Mother and Father shared joint legal and physical custody.

The Divorce Decree does not contradict the pre-decree order. The Divorce Decree grants joint physical custody to Mother and Father so long as Mother relocates to Georgia. Thus, the family court continued to recognize that joint physical custody is in the best interests of the children.

The family court never determined that Mother was the primary care giver. FOF 23(e) and (f), based on the testimony of the CE, states that "Father is an engaged Father with good parenting skills" and "Mother is also a good parent[.]" Based on the CE's Report, FOF 22(d) found that "Father appears to have a strong relationship with both minor children." The CE's Report also stated that "[b]oth parents appear to be equally involved in the children's lives."

Thus, the family court had to make a determination of how to split custody between what it determined to be two equally competent parents. The family court found that Georgia offered a better quality of life and would provide stability for the minor children. In addition, the children would be returning to a familiar place and would have the support of paternal grandparents in Georgia. Thus, because relocation was in the best interests of the children, joint physical custody was only possible if Mother also moved to Georgia.

---

[3] The Honorable Catherine H. Remigio presided.

[4] The Honorable Catherine H. Remigio entered this order.

Mother also contends that she is entitled prima facie to an award of custody because she has had de facto custody of the children.[5] In this case, there was no determination that Mother had de facto custody and Mother did not argue below that she had de facto custody.

Therefore, substantial evidence supports the family court's determinations and the family court did not abuse its discretion regarding the physical custody award.

**F.   Alleged abuse.**

Mother contends that relocation to Georgia is not in the best interests of the children because Father has a history of abuse towards Mother and one incident of abuse towards one of the children.

In this case, both Father and Mother have a history of alleged family violence directed at each other. Mother also testified to one incident of alleged family violence by Father that was directed at one of their children.

Mother does not contend under HRS § 571(a)(9) that there should have been a rebuttable presumption that it would be detrimental for the children to be placed in Father's custody due to his alleged abuse. Indeed, as noted, there is evidence of alleged physical altercations by both Father and Mother. Rather, Mother contends under HRS § 571-46(b) that the family court erred in its determination that it was in the best interests of the children to relocate with Father.

HRS § 571-46(b) provides a non-exhaustive list of factors for the court to consider when determining the best interests of the child. The issue of family violence was presented in testimony by both Mother and Father and also

---

[5]   HRS § 571-46(2) provides:

> Custody may be awarded to persons other than the father or mother whenever the award serves the best interest of the child. Any person who has had de facto custody of the child in a stable and wholesome home and is fit and proper person shall be entitled prima facie to an award of custody.

considered by the CE. For example, one stated focus of the CE's Report was to evaluate alleged child abuse by Father. The CE's Report stated that "[o]bservations and collaterals did not indicate any concerns about the children in Father's care." The CE's Report also noted that Mother "describes Father as a 'fun dad' and that before he would ask the girls to be quiet and lose patience, but now he is doing more things with them and they have a good time with him." In addition, as noted above, substantial evidence supports the family court's finding that Father is capable of providing competent and effective parenting.

Therefore, given all of the evidence presented in this case and because it was the province of the family court to weigh the evidence presented, the family court did not abuse its discretion when it determined it was in the best interests of the children to relocate to Georgia.

**G. Georgia as the family's permanent home.**

Mother contends that the family court erred when it found that Georgia was the family's permanent home as a basis for determining it was in the best interests of the children to relocate to Georgia. Mother also challenges the family court's findings that travel to Hawai'i was a temporary move.

Mother and Father dispute whether the move to Hawai'i was meant to be a temporary move, however, neither party disputes that Georgia was their permanent home before moving to Hawai'i.

Father testified that the family moved to Hawai'i after he accepted a temporary job and the move was meant to be an extended honeymoon because he and Mother never went on a honeymoon after they were married. Father also testified that because the move was always meant to be temporary, he declined to accept several offers of permanent job positions located in Hawai'i. Finally, Father testified that during a visit to Georgia with the children, it felt like the children were at home.

By contrast, Mother testified that when she and Father were discussing the move to Hawai'i, they discussed it in terms of the fact that the move would be permanent.

Thus, the family court weighed the evidence presented and assessed the credibility of both Mother and Father's testimony and made a determination that Georgia was the family's permanent home and the move to Hawai'i was temporary.  This court will not disturb the family court's finding because it is not clearly erroneous.

## III.  Conclusion

Given all of the evidence presented in this case, the family court did not abuse its discretion in determining that it was in the best interests of the children to relocate to Georgia.

We therefore affirm the "Decree Granting Absolute Divorce and Awarding Child Custody," filed September 16, 2014, in the Family Court of the First Circuit.

DATED:  Honolulu, Hawai'i, January 25, 2016.

On the briefs:

Rebecca A. Copeland,
for Defendant-Appellant.

Steven J. Kim,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge